# EXHIBIT 2

D-1-GN-23-004608

8/22/2023 7:26 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-23-004608
Ruben Tamez

NO. _____

| | | |
|---|---|---|
| HEATHER ELIZABETH GODWIN, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | 200TH, DISTRICT COURT |
| v. | § | |
| | § | _____ JUDICIAL DISTRICT |
| JOSEPH BRUNO, SR., CPF RIVER OAKS AUSTIN, L.L.C. D/B/A THE PARK ON BRODIE LANE, REED TECKENBROCK, WINCKLER AND HARVEY, LLC, AND FACEBOOK, INC. | § § § § § § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## ORIGINAL PETITION

### 1. *Discovery Level*

Discovery in this case is intended to be conducted under Level 2 of Rule 190 of the TEXAS RULES OF CIVIL PROCEDURE.

### 2. *Parties*

This suit is brought by HEATHER ELIZABETH GODWIN, Plaintiff. The last three numbers of HEATHER ELIZABETH GODWIN's driver's license number are 048. The last three numbers of HEATHER ELIZABETH GODWIN's Social Security number are 129.

JOSEPH BRUNO, SR., CPF RIVER OAKS AUSTIN, L.L.C. D/B/A THE PARK ON BRODIE LANE, REED TECKENBROCK, and FACEBOOK, INC. are Defendants.

### 3. *Domicile*

HEATHER ELIZABETH GODWIN has been a domiciliary of Texas for the preceding six-month period and a resident of Travis County for the preceding ninety-day period.

### 4. *Service*

No service is necessary at this time.

### 5. *Defendants and Jurisdiction*

Defendant Joseph Bruno, Sr., is a citizen of Louisiana. He is an attorney licensed in Texas. His domicile is in Louisiana.

Defendant CPF River Oaks Austin L.L.C. d/b/a The Park on Brodie Lane is incorporated under the laws of Texas.

Defendant Reed Teckenbrock is a citizen of Texas. His domicile is in Texas.

1

Defendant Winckler and Harvey, LLC, is a law firm employing Defendant Teckenbrock.

Defendant Facebook, Inc., operates as a social networking company worldwide. The company builds software tools that enable users to share information and to communicate with others. Its domicile is in Texas.

### 6. *Background*

On January 1, 1988 Glyn J. Godwin drugged and raped Plaintiff on video and eventually stored the video file on his computer.

In 1989, Glyn J. Godwin placed a large cheval mirror in Plaintiff's bedroom and would not allow her to move it. Glyn J. Godwin set up a hidden camera to record her image in the mirror, and therefore prevented Plaintiff from relocating the mirror.

In or about 1990. Defendant Glyn J. Godwin was in financial trouble and to pay the debt, he agreed colluded with Gerard Ruth into defrauding Plaintiff into an engagement and "protection" by surveillance while Gerard Ruth was to be deployed overseas. Plaintiff saw Glyn J. Godwin and Gerard Ruth speaking outside after Gerard Ruth called Plaintiff and asked to marry her. As Glyn J. Godwin walked inside and passed Plaintiff, he nodded to give his assent and defrauded her by convincing her into commercial sex acts of pornography.

In 1990, Defendant Gerard Ruth called Plaintiff and asked to marry her. He took her to meet a friend, Charles Gardner, at his restaurant. Gerard Ruth said he wanted to surveil and protect Plaintiff while he was deployed overseas. Plaintiff asked if the surveillance would be in her bedroom and bathroom and Gerard Ruth and Charles Gardner told her no. Gerard Ruth and Plaintiff had been out with a group of friends often, drinking until 3 or 4 in the morning, and it was likely to her that protection was warranted. Soon after, Plaintiff and Gerard Ruth broke up and Plaintiff believed the contract dissolved because the engagement and Gerard Ruth's motivation for ensuring Plaintiff's safety were terminated.

Defendant Charles Gardner produced the "contract for surveillance" at his restaurant. Charles Gardner was party to a conversation in which Gerard Ruth said he wanted to surveil and protect Plaintiff while he was deployed overseas. Plaintiff asked if the surveillance would be in her bedroom and bathroom and Gerard Ruth and Charles Gardner told her no. Charles Gardner produced the contract and pen for Plaintiff to sign it.

Defendant Kings Cross Ventures d/b/a Birraporetti's, Inc., is a restaurant now owned in part by Charles Gardner and the location where the contract for surveillance took place.

Defendant Ronnie Baldo met Plaintiff in 1992. He told her he had been arrested with two kilograms of cocaine but only got probation as a sentence. The sentencing guideline for that crime is five years in prison. Defendant defrauded Plaintiff into pornography in exchange for the lighter sentence. Defendant Ronnie Baldo and Plaintiff were married from 1994-2006 and have one daughter, who has cut off contact with her as a result of this suit. In 2016, Defendant Ronnie Baldo texted Plaintiff that the enterprise filmed the commercial sex acts of pornography because he was so good looking and that she "needed to let go of the past" in regard to the pornography when he knew Plaintiff was still being coerced into the commercial sex act of pornography. Ronnie Baldo defrauded and coerced Plaintiff into pornography in exchange for a lighter criminal sentence.

In 1994, Plaintiff was living with her father and stepmother in Slidell but would often stay in New Orleans overnight. Plaintiff worked at Cox Cable. The "information highway", the internet,

2

was just being introduced. Plaintiff called her father to tell him she'd be staying in New Orleans for the night. Defendant kept saying "I'm sorry, I'm sorry, I'm sorry". Plaintiff did not know why. Plaintiff believes his internet was hacked and the rape video he had stored on his computer had been distributed.

In Plaintiff's first year of law school, Witness A, Plaintiff's criminal law professor, called Plaintiff into her office. Witness A is a recovering alcoholic. She told Plaintiff that while drinking, people often make "decisions they regret…like surveillance?!?" Plaintiff thought Witness A was suggesting she had seen a video of Plaintiff on surveillance shoplifting when she was younger. Plaintiff told Witness A that her life was different now that Plaintiff was older and had a family. Witness A did not mention the surveillance again.

After her first law school semester, Plaintiff was number five in her class and tied for the best exam paper in Contracts but no firm would hire her for a summer internship.

Plaintiff went to work for Defendant Glyn Godwin after graduating law school. He did not pay her as agreed and sued her. He lost. In 2003 Plaintiff went to a Women's Lawyers Reception and another lawyer grabbed her attention from across the room. She made a gesture that referred to the 1988 rape. Two female lawyers standing by her told her to stop. The lawyer said "Well, SOMEONE'S got to tell her."

In 2003, Witness B, a relative of Plaintiff, told Plaintiff "You are throwing your pearls before swine." Plaintiff thought Witness B was referring to her handling personal injury cases instead of aspiring to a better legal career.

In 2006, Plaintiff was a Legal Aid Attorney in Austin, Texas. Texas Appleseed, a non-profit helping Katrina evacuees, was hiring for an Executive Director position in New Orleans. Plaintiff applied. Witness C was the hiring manager that met with Plaintiff. Witness C entered the room Plaintiff was waiting in, sat down, and said "Is there anything you need to tell me?" Plaintiff said no. Witness C left.

In 2008, plaintiff attended a reception at the Legal Aid office where she worked. The Executive Director told her she should speak with Witness D, a labor lobbyist who knew people in Texas and Louisiana. Plaintiff introduced herself to Witness D. The first thing Witness D said was "Did your Dad molest you when you were younger?" Plaintiff had not remembered the rape at that time and denied it.

In early 2015, Plaintiff answered a Craigslist ad for a room to rent posted by Kevin Walter. Plaintiff called Kevin Walter who implied a warranty of habitability and rented a room to Plaintiff at 7514 Saint Louis St, Austin, Texas, 78757. Plaintiff received hints on her music service that the home was being watched. Plaintiff climbed into the attic and saw AV wire stretched from ceiling fixture to ceiling fixture. Plaintiff took pictures but they were removed from her phone. Plaintiff was using Mr. Walter's wifi. Her devices were hacked by Defendant Kevin Walter. Plaintiff began saving up for another home to rent. Mr. Walter sued Plaintiff for eviction and obtained a $650.00 judgment.

When Plaintiff was confronting Kevin Walter about the video in 2015, Charles Gardner bullied Plaintiff online, including but not limited to telling her he was her "captain" and ordering her to pay the rent.

Later in 2015, Witham Apartments rented an apartment to Plaintiff. Social Media posts revealed to Plaintiff that she was still under cameras.

3

In Fall of 2015, Plaintiff remembered about the contract of "surveillance for protection" and realized it was actually one regarding hidden cameras and pornography and had been in existence since 1990 and was still in existence. Plaintiff learned this through social media posts and realized that the above statements others had told her in the past hinted that she was recorded and exploited. Glyn J. Godwin, Gerard Ruth, and Charles Gardner among unknown others psychologically abused Plaintiff on social media to coerce Plaintiff into pornography.

During this time, Plaintiff continued to make social media posts regarding the pornography. A motorcycle police officer for the City of Austin drove up alongside of Plaintiff's vehicle and physically threatened her by imitating a gun with his hand and pretending to shoot at Plaintiff.

In late 2015, Plaintiff planned to leave Texas and scheduled an audition in Houma, Louisiana on December 12, 2015. When she tried to fill up her car with gasoline she found her debit card had been cancelled. She called the bank the following business day and was told she had requested the card be cancelled. Plaintiff had not cancelled her card. An unknown person, Joe Doe, had hacked her electronics and cancelled her debit card in order to physically restrain her into pornography.

In January 2016, Plaintiff's mental state was deteriorating into severe depression. She could not find another apartment because of the eviction on her record. She left the apartment and lived in her car from January 2016 – February 13, 2016.

On February 13, 2016, Plaintiff met Jane McFarland at a mutual friend's party. Ms. McFarland invited Plaintiff to live in her guest house. Over dinner one night, Plaintiff told Ms. McFarland, her husband Defendant Sonny McFarland, and their friend Tracy Rogers that she had been defrauded into a contract and men had been recording her in her homes since 1990. Defendant Sonny McFarland said "They still do." Defendant Tracy Rogers said she had a female friend, Mary Sanchez, who wanted to lease a home in Lockhart. Plaintiff asked if she would be filmed at the home. Tracy Rogers said no.

In July 2016, Plaintiff called Mary Sanchez and discussed her situation. Mary Sanchez assured Plaintiff she would not be filmed and rented half a duplex to Plaintiff at 907 Maple Street, Lockhart, Texas. 78644. It became clear from social media posts to Plaintiff that she was still being recorded. Plaintiff hung a tablecloth from swag hooks above her bed. Holes appeared in the ceiling. Plaintiff filled them with toothpaste. Plaintiff had no access to the attic from her side of the duplex. One day, Plaintiff noticed water on the floor coming in from the other side of the duplex. She texted her neighbor about it who told her to go turn off the air conditioner. Plaintiff said she had no key. Her neighbor replied her front door is always unlocked when no one is home because only the deadlock accessible from the inside works. Plaintiff went next door and turned off the air conditioner. She noticed a small opening in the bathroom to the attic. She climbed up and saw AV wires from ceiling fixture to ceiling fixture. Mary Sanchez followed Plaintiff into the attic and told her she should "have a rational relationship with the cameras". Plaintiff began saving her money to move out of the home. Mary Sanchez issued a Notice to Vacate. Plaintiff posted online that she would tell an eviction judge about the cameras. Ms. Sanchez did not file an eviction. She left dead raccoons in the attic and the resultant stench drove Plaintiff out.

In mid-2018, Plaintiff rented a room at HI One Austin LLC d/b/a Habitat Suites, Inc., on the first floor of the property. Jack Doe, an unknown person, drilled holes through the floor of the unit above plaintiff and made holes in the ceiling above Plaintiff which provided access for the procurement of video of Plaintiff. Plaintiff reported the incident and explained her situation to

4

hotel staff and posted pictures of the holes on social media. Nothing was done about it. Plaintiff filled the holes with toothpaste.

On September 19, 2018, Forest Cook had employed Plaintiff as a paralegal and was locked out of his office for nonpayment. As a result, Plaintiff was working out of his house. Mr. Cook placed a portable air conditioning unit on the counter and told Plaintiff it might make her sick. He then left to run errands. The air released from the portable air conditioning unit did make Plaintiff ill. Forest Cook poisoned Plaintiff to send her a message to stop speaking out about her situation on social media.

Witness E worked for Defendant Forest Cook as well. Mr. Cook was planning a party and Plaintiff and Witness E planned to go. However, Witness E called plaintiff on the day of the party and told Plaintiff she thought Cook had drugged her but she wasn't sure. Witness E was too tired to attend the party, but Plaintiff went. Plaintiff had to call Witness E to come pick her up because she had been drugged at the party. Forest Cook drugged Plaintiff for reasons including to send her a message to stop speaking out about her situation on social media.

In late 2018, a friend of Plaintiff contacted her and said that her brother, Kelly Collenborn, was living in a duplex with a vacant side. Plaintiff moved in, and was at Kelly Collenborn's home talking with him. He brought out a blue glass fleur de lis platter as a housewarming gift but took it back when Plaintiff began discussing the video recording. Plaintiff's access to the attic was locked on her side. Plaintiff purchased a hidden camera detector. When activated, it showed a recording device was in the ceiling fan. She was bullied online and told the detector is a scam by Mr. Collenborn's relative.

In 2019, Plaintiff made a report to Austin Police Department and the officers made fun of her.

In February 2019, Plaintiff decided to move back to New Orleans with a friend. Marthon Gimre sublet his apartment to her. A device was on the wall above her bed. Plaintiff asked what the device was. Defendant Gimre told her it was a smoke detector. It did not look like a smoke detector and it flashed as a camera would flash at regular intervals.

In 2019, while working for rideshare in New Orleans, Plaintiff was at a CVS store when Witness F entered the store. Witness F is a female Plaintiff attended law school with. Witness F froze when she saw Plaintiff. Plaintiff asked "Did you know?" and Witness F said "We were babies...."

In 2019, Plaintiff called Defendant Joseph Bruno, Sr., for help escaping the contract and suing for damages. Defendant Joseph Bruno, Sr., called Plaintiff back and said "they told me not to help you". In June of 2022, Plaintiff called Mr. Bruno's office and spoke with his secretary, who later advised Plaintiff that Defendant Bruno didn't know what she was talking about.

In 2019, to escape the contract of pornography by fraud and coercion, Plaintiff agreed to appear on the Dr. Phil Show to be sent to Rehab in California and begin a new life. She attended a Rehabilitation Facility for Post-Traumatic Stress Disorder.

In August of 2020, Plaintiff was living in an abandoned bus terminal used as a homeless shelter in Santa Ana, California. Plaintiff attempted to find employment but all legal positions wanted candidates familiar with California law. Plaintiff called Witness D for help because she knew Witness D believed her. Witness D paid for a plane ticket, paid Plaintiff's bar dues, and gave her a place to stay temporarily.

5

In September 2020, Plaintiff was trying to find an apartment to lease but no business would lease to her because she had two evictions on her record. Plaintiff contacted an apartment locating service who directed her to Defendant River Oaks, LLC d/b/a The Park on Brodie Lane which implied a warranty of habitability and rented an apartment to Plaintiff with only a $200.00 deposit. Plaintiff has a physical condition for which she needs surgery and about which she is bullied online. In order to see this condition, Plaintiff needs to hold a mirror in front of another mirror in order to see her back. The first time Plaintiff did this at Defendant River Oaks, LLC d/b/a The Park on Brodie Lane, her phone immediately started flashing its LED light and sounding an alarm. Plaintiff does not save that set on her phone, which informed her that whoever hacked her phone was watching her in real time.

In April 2022, Plaintiff contacted Defendant Reed Teckenbrock for help to escape the commercial sex acts of pornography and sue for damages. Defendant Reed Teckenbrock told Plaintiff he would look into it and get back to her. He sent her an email with case law supporting Defendants' contention that the Plaintiff consented to the commercial sex acts of pornography and that she would be subject to a defamation claim if she proceeded with filing suit. When Plaintiff submitted evidence that she tried to run away in 2015 but her bank account had been hacked and her debit card cancelled, he ceased any contact with her.

On May 16, 2022, Plaintiff made a report to the Federal Bureau of Investigation online. That report has gone unanswered. Plaintiff made telephone contact with a representative of the Federal Bureau of Investigation who laughed at her and discounted her report.

On June 3, 2022, Plaintiff was able to escape when Witness G, a client's sister, called other attorneys and those attorneys told her Plaintiff needed to get out of her apartment. Witness G rented her a house.

On June 13, 2022, Plaintiff called Austin Police Department again and made a report about hacking. The claim number is 22-5017612. Two weeks later a clerk called and said the case was assigned to a detective. No detective called Plaintiff. Plaintiff called back and spoke with a representative that her claim did not exist in the system. On January 4, 2023 Plaintiff called APD and spoke with Terri (ID 7300048) who told her no detective was ever assigned and gave her a new case number of 23-00004806. No detective has called Plaintiff.

In August 2022, Witness F called Defendant Winckler and Harvey, LLC, for legal help. She told the representative that Plaintiff had been one of her attorneys. The representative told her they would not take her case because there was "a massive conflict of interest."

Since 2015, Plaintiff has been arguing on social media and pleading with others on Defendant Facebook's social media site to help her. No one would help, and most of the comments were that plaintiff consented or she deserved it. Plaintiff was continuously gaslighted on Facebook by fraudulent means. Plaintiff was "shadowbanned" on Facebook. An employee of Facebook monitors her posts and censors what information Plaintiff makes public. The arguments and complaints Plaintiff made on Facebook were intercepted by a Facebook employee and never made public. Plaintiff interpreted her friends not seeing her complaints as their refusal to help and as their condoning the treatment of her.

The pornography of Plaintiff without her knowledge for 25 years and with her knowledge for 8 years alongside her objections to it publicly on social media to no avail and the ensuing online bullying and despair displayed on the internet have made Plaintiff a target for hackers and sadistic

6

misogynists.

Anyone who helps Plaintiff becomes a target as well. Plaintiff has sought help from four internet security providers. Three would not help her because of fear of organized crime. A fourth did, and provided her a secured laptop but stopped real-time monitoring which requires linking to her laptop because she had been hacked and he did not want to risk his own equipment. Plaintiff has lost computer files related to clients. Plaintiff has lost emails. Even without any further actions by the named Defendants, they have created a trove of content online which attracts unknown anonymous actors who derive sexual gratification by watching women trafficked in pornography and in despair. There is no way to protect Plaintiff's online communications from infiltration by these unknown actors given the state of internet regulations currently and for the foreseeable future.

Plaintiff has lost friends and family members due to Defendants' acts.

**Plaintiff is still a target of internet hacking which affects her employment. If Plaintiff leases another residence, the same fraudulent recording of pornography of Plaintiff is likely to occur.**

The acts above have caused Plaintiff emotional distress, mental pain and anguish, loss of companionship, loss of consortium, loss of reputation, and loss of past and future wages in violation.

### 7. *Negligence Claims*

In 2020, Plaintiff called Defendant River Oaks, LLC d/b/a The Park on Brodie Lane which implied a warranty of habitability and rented an apartment to Plaintiff. Defendant River Oaks, LLC d/b/a The Park on Brodie Lane or an agent thereof leased an apartment to Plaintiff and had a duty not to interfere with Plaintiff's use and enjoyment of the leased premises but breached that duty under the guise of consent and filmed pornography of plaintiff without her knowledge and distributed the film when they knew or should have known Plaintiff had not consented to the pornography, causing Plaintiff emotional distress, mental pain and anguish, loss of companionship, loss of consortium, loss of reputation, and loss of past and future wages.

In April 2022, Plaintiff contacted Defendant Reed Teckenbrock for help to escape the commercial sex acts of pornography and sue for damages. Defendant Reed Teckenbrock told Plaintiff he would look into it and get back to her. He sent her an email with case law supporting Defendants' contention that the Plaintiff consented to the commercial sex acts of pornography and that she would be subject to a defamation claim if she proceeded with filing suit. When Plaintiff submitted evidence that she tried to run away in 2015 but her bank account had been hacked and her debit card cancelled, he ceased any contact with her. Defendant Reed Teckenbrock knew or should have known that Plaintiff had not consented to the pornography and that the victimization was ongoing. He had a duty to plaintiff to provide the standard of care expected in an attorney/client relationship, His failure to provide the ethical and professional standard of care caused Plaintiff emotional distress, mental pain and anguish, loss of companionship, loss of consortium, loss of reputation, loss of property, and loss of past and future wages.

In June of 2022, Plaintiff contacted Defendant Bruno for help. Defendant Bruno knew or should have known that Plaintiff had not consented to the pornography and that the victimization was ongoing. He had a duty to plaintiff to provide the standard of care expected in an attorney/client relationship, His failure to provide the ethical and professional standard of care

7

caused Plaintiff emotional distress, mental pain and anguish, loss of companionship, loss of consortium, loss of reputation, loss of property, and loss of past and future wages.

Since 2015, Plaintiff has been arguing and pleading with others on Defendant Facebook's social media site to help her. No one would help, and most of the comments were that plaintiff consented or she deserved it. Plaintiff was continuously gaslighted on Facebook by fraudulent means. Plaintiff was "shadowbanned" on Facebook. An employee of Facebook monitors her posts and censors what information Plaintiff can share with the public. The arguments and complaints Plaintiff made on Facebook were intercepted by a Facebook employee and never made public. Plaintiff interpreted her friends not responding to her complaints as their refusal to help and as their condoning the treatment of her. Defendant Facebook has no oversight over employee tampering with users' accounts in this fashion. Defendant Facebook or an agent thereof knew or should have known Plaintiff had not consented to pornography and defrauded Plaintiff into pornography by the means described above, causing her emotional distress, mental pain and anguish, loss of companionship, loss of consortium, loss of reputation, and loss of past and future wages.

The pornography of Plaintiff without her knowledge for 25 years and with her knowledge for 8 years alongside her objections to it publicly on social media to no avail and the ensuing online bullying and despair displayed on the internet have made Plaintiff a target for hackers and sadistic misogynists. Plaintiff has lost computer files related to clients. Plaintiff has lost emails. Even without any further actions by the named Defendants, their past negligence has created a trove of content online which attracts unknown anonymous actors who derive sexual gratification by watching women trafficked in pornography and in despair. There is no way to protect Plaintiff's online communications from infiltration by these unknown actors given the state of internet regulations currently and for the foreseeable future.

## 8. *Relief*

Plaintiff prays for damages for emotional distress, loss of companionship, loss of consortium, loss of reputation, and lost past and future earning potential in the amount of $10,000,000.00.

Plaintiff prays for general relief.

Respectfully submitted,

*[signature]*

**HEATHER E. GODWIN, PRO SE**
7310 Menchaca Road
Box 152500
Austin, Texas 78715
phone: (512§ 871-9030
fax: (737§ 249-9258
hgodwin@godwinlawoffice.com

8

**THE LAWYER REFERRAL SERVICE OF CENTRAL TEXAS**
*A Non-Profit Corporation*

---

## IF YOU NEED A LAWYER AND DON'T KNOW ONE, THE LAWYER REFERRAL SERVICE CAN HELP

### 512-472-8303
866-303-8303 (toll free)
www.AustinLRS.com

Weekdays 8:00 am to 4:30 pm
$20.00 for first half hour attorney consultation
(free consultations for personal injury, malpractice, worker's compensation, bankruptcy, and social security disability)

This service is certified as a lawyer referral service as required by the State of Texas under Chapter 952, Occupations Code. Certificate No. 9303

---

## SI USTED NECESITA EL CONSEJO DE UN ABOGADO Y NO CONOCE A NINGUNO PUEDE LLAMAR A LA REFERENCIA DE ABOGADOS

### 512-472-8303
866-303-8303 (llame gratis)
www.AustinLRS.com

Abierto de lunes a viernes de 8:00 am-4:30 pm
$20.00 por la primera media hora de consulta con un abogado
(la consulta es gratis si se trata de daño personal, negligencia, indemnización al trabajador, bancarrota o por incapacidad del Seguro Social)

This service is certified as a lawyer referral service as required by the State of Texas under Chapter 952, Occupations Code. Certificate No. 9303